The Terre Haute and Indianapolis Railroad Company v. McCorkle.

---

No. 17,039.

THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY v. McCORKLE.

PRACTICE.—*Exception to Each Instruction, How May be Taken.*—An exception taken "to the giving of each and every one" of a series of numbered instructions is a separate exception to each instruction, and presents each instruction for consideration of the court on a motion for a new trial.

The Terre Haute and Indianapolis Railroad Company *v.* McCorkle.

SAME.—*Combination of Two Facts in Order to Recover.—Instructions Allowing Recovery if One be Proven.*—Where a complaint is drawn upon the theory that it is essential to allege two facts, or series of facts, in order to recover, an instruction to the jury that the plaintiff may recover upon proof of either one of such facts, or series of facts, is erroneous.

SAME.—*Proving Facts as Precisely Alleged not Necessary.*—The plaintiff is not bound to prove the facts precisely as alleged. It is sufficient if he prove the substance of the allegation.

SAME.—*Only Facts Sufficient to Constitute Cause of Action Need be Proved.—Surplusage.*—The plaintiff may allege more facts than are essential to constitute a cause of action, but he need only prove the substance of so many of them as constitute a cause of action, and the remainder of them may be regarded as immaterial.

PLEADING.—*Scope and Tenor.—Theory.*—A pleading must be judged from its general scope and tenor, and it must proceed on a definite theory, and be sufficient on that theory or it will not be good for any purpose.

NEW TRIAL.—*Instructions, how Several May be Assigned as a Reason for a New Trial.—Separate Assignment.*—An assignment as a cause for a new trial that "the court erred in giving to the jury each of the instructions numbered from one to sixteen inclusive, which were given by the court to the jury," is a separate assignment of each of the sixteen instructions as a cause for a new trial, and is sufficient to secure the court's consideration of each of the instructions.

SAME.—*How Exceptions Must be Taken, and Rulings Assigned as a Cause for a New Trial.*—An exception must be so taken as to require the trial court to re-examine and review each particular ruling by itself, regardless of the other rulings complained of, and each particular ruling must be pointed out in the exception and in the motion for a new trial with such a degree of certainty that both the trial court and the appellate tribunal can turn to and read and review each particular ruling objected to, and know while so engaged that it is not wasting its time on something not objected to.

From the Marion Circuit Court.

*W. H. H. Miller, F. Winter* and *J. B. Elam,* for appellant.

*J. S. Duncan* and *C. W. Smith,* for appellee.

McCABE, C. J.—The appellee sued the appellant in a complaint of two paragraphs to recover damages for a personal injury in the loss of his arm, caused by the alleged

The Terre Haute and Indianapolis Railroad Company v. McCorkle.

negligence of appellant. The issues formed upon the complaint were tried by a jury, resulting in a verdict and judgment for appellee for $6,000 over appellant's motion for a new trial. The error assigned here is the overruling appellant's motion for a new trial. Among the reasons assigned therefor in the motion, is the giving of certain instructions asked by the appellee. We are met at the threshold of the investigation of the question sought to be raised on the instructions, by the contention that the exception to the giving of the instructions, and the specification in the motion for a new trial were such as to present no question for our consideration and decision. The exception reads as follows: "To the giving of each and every one of which instructions the defendant did then and there except."

The specification in the motion for a new trial is as follows: "That the court erred in giving to the jury each of the instructions numbered from one (1) to sixteen (16) inclusive, which were given by the court to the jury."

Of this exception and specification, appellee's learned counsel say: "The court gave but sixteen instructions, so that the assignment of alleged error in the motion for a new trial is equivalent to an assignment that the court erred in giving each of the instructions by it given to the jury.  *  *  *  Such an assignment  *  *  *  *  would require the court to examine the whole series. We think such a practice is not permissible. It is true that the motion alleges that the court erred  *  *  *  in giving each of the instructions given; this, in a certain sense, makes the allegation of error several as to each of the instructions  *  *  given. But that suggestion does not reach or answer the objection which we make. Our proposition is that the motion for a new trial must point out specifically the particular instruction or instructions

to which the trial court's attention is sought to be called. Or to use the language of. this court in the case of *Jones* v. *Layman*, 123 Ind. 569 (573), 'no allegation of error in a motion for a new trial is sufficient which would require the court to take up the instructions asked and refused, and read them through one by one for the purpose of ascertaining, if at all, where it had erred.' "

In that case the eighth cause for a new trial designated no particular instruction to which objection was made. But that is not the case here. The fifth cause for a new trial in this case designates sixteen different instructions, to each one of which a separate objection is made, as is practically conceded by appellee's learned counsel. The quotation they make from *Jones* v. *Layman, supra,* is somewhat misleading, unaccompanied by a paragraph next to and preceding the one they quote.

It reads thus: "If counsel were insisting in the court below for a new trial because of alleged error of the court in refusing to give instructions asked by the appellant, it was their duty to point out in their motion for a new trial severally by their respective numbers the instructions relied upon." That is the very thing the appellant has done in this case, as is practically conceded by the learned counsel for appellee.

There would have been no room for appellee's contention, unsound as it is, had the objection been to each of the instructions numbered from one to fifteen. That would have left the sixteenth instruction unobjected to and would have obviated appellee's contention.

Two things are required in taking exceptions to several rulings and making the same a cause or reason in the motion for a new trial. First, the exception must be so taken as to require the trial court to re-examine and review each particular ruling by itself alone considered, regardless of the other rulings complained of. Second,

each particular ruling must be pointed out in the exception and the motion for a new trial with such a degree of certainty as that both the trial court and the appellate tribunal can turn to and read and review each particular ruling objected to, and know while so engaged that it is not wasting its time on something not objected to. This principle does not depend on the number of rulings made, instructions given or instructions refused in the trial court. It permits every ruling of the trial court to be brought under review, and that right does not depend on whether any or all of the objections and exceptions were well taken or not. The right to object and except is one thing and the right to have such objection and exception sustained is another and quite a different thing. Here the trial court was informed by the exception and the specification in the motion for a new trial exactly and precisely what it was that the appellant complained of. It was informed that the appellant claimed and insisted that it had erred in giving each one of the sixteen instructions. That is, that the trial court had committed sixteen separate and distinct errors and it was asked to review its ruling as to each one of them. It is difficult to see how the correctness of each one of such instructions could be any more separately presented for review. It is not denied by the learned counsel for appellee that if the exception and motion for a new trial had singled out each instruction as one separate ground of exception and made the giving of each one of them a separate ground for a new trial, making sixteen reasons or grounds for a new trial instead of one, as was done, that the correctness of every one of the sixteen instructions would have been presented for review, and yet they practically admit that the exception and the specification in the motion for a new trial present each one of them as separately as if each

one was made a separate ground of exception and separate ground for a new trial.   And certain it is that the language of the exception and motion has the same meaning as if each instruction had been made a separate ground of exception and motion for a new trial.   We therefore hold that each one of the instructions given is presented here for review.

The fourth instruction given is the first one urged upon us as error.   Whether it is error or not depends on what construction the complaint is to receive.

The particular negligence complained of as the cause of appellee's injury consisted of two separate defects in a box car suffered by the appellant to be on the switching tracks of appellant, and which the appellant required the appellee, as switchman in its employ, to couple to a train of cars in its switch yards.   The defects complained of were a defective drawbar and a bent iron step or stirrup close to the end of the car where the defective drawbar was.   And the question of construction is whether the two defects were different elements of one and the same cause of action, dependent on the existence of both combined, or whether each defect was a separate and independent cause of action stated in the same paragraph of the complaint.   As to this point both paragraphs of the complaint are alike.

So much of the first paragraph as is essential to the determination of the question, is as follows:   "That on said 28th of July, 1892, a car of the defendant, which had been originally thus constructed, was standing upon one of the switching tracks of the defendant in the yard aforesaid; that said car was in a damaged condition in the following particulars, to wit:  The plate or iron furthermost beneath the car, used in connection with the said spring, had been broken or lost from its place and was wholly gone, so that when the drawbar came in contact

with the outer plate and such outer plate came in contact with the spring at one end and the spring at the other end failed to come into contact with the inner plate at the other end, and as a result the spring would fail to operate; and when the drawbar was driven in under the car, the spring not operating, it was not forced back to its proper place, but the head of the drawbar remained very close to the frame or the body of the car; that when the drawbar is in this condition, the danger to the person attempting to couple said car to another car is increased in a very high degree; that in addition to the foregoing defective condition of the car, the iron step or stirrup on the side of the car, at the same end, had been bent longitudinally with the car in such a manner that it projected from six (6) to eight (8) inches beyond the end of the car; that the defendant knew of the damaged, defective and dangerous condition of the car, but in no manner gave this plaintiff any warning that it was in such defective and dangerous condition, and this plaintiff had no notice in any manner of such defective and dangerous condition; that on the night of said 28th day of July, 1892, and after it had become so dark that such defects could not be discovered, the said Grant Johnson, thus in charge of the locomotive engine used for the purpose of backing certain other cars to said car for the purpose of coupling on to the same, directed this plaintiff to attend such train in the process of making up, to such car in such defective condition, and make such coupling; that such coupling was to be made at the end of said car at which said drawbar and such step were in such defective condition; that as said train of cars came into proximity with such defective car, this plaintiff gave attention to the making of such coupling, and in so doing, observed that the head of the drawbar was close up against the frame or body of the car, and that

The Terre Haute and Indianapolis Railroad Company *v.* McCorkle.

it would require great care on his part to make such coupling, and his whole attention was fixed, and of necessity fixed, upon the matter of raising the coupling link to have it enter the head of the drawbar; that as the cars came close together he raised the link by which the coupling was made, and as it entered the head of the drawbar he stepped quickly back so as to be out of danger as the cars came in contact, and as he stepped backward the step or stirrup, so bent and projecting outward from under the end of the car, caught his leg and caused him to lose his balance, and at the same instant the train which was backing down, struck him and threw him backward against the car to which he was attempting to couple, and in his endeavor to save himself from falling on the track beneath the cars his right arm came between the deadwoods of the cars, and was, by the contact of the cars together, badly crushed and mangled, and to such an extent that amputation was necessary, and the same was amputated below the elbow; that. by reason of the darkness and his attention having been fixed upon the coupling of the car, he did not observe, before he was caught by the step, that the same was bent so as to project beyond the end of the car; that said accident occurred without any fault or negligence whatever upon the part of this plaintiff, and solely through the negligence of the defendant, as herein set forth.''

So much of the fourth instruction as is complained of is as follows: "Now, to apply the general principles first stated to the issues in this case, the court instructs you as follows: The burden is upon the plaintiff to establish by a fair preponderance of the testimony that the said car was defective in one or the other of the matters above set out; that the defendant had notice of such defects, or by the exercise of proper care in the inspection of its cars, would have had notice of such defects.

The Terre Haute and Indianapolis Railroad Company *v.* McCorkle.

*　*　* The plaintiff must prove that one or the other of such defects, or both, operating conjointly, produced the injury complained of.'' *　*　*

There were other features of the instruction, but the above is all of it that relates to the question whether the appellee was entitled to recover on proof of one only of the defects alleged to exist in the car. The instruction clearly implies that the jury may, if it does not expressly direct them to, find for the plaintiff if one only of the alleged defects in the car is established by the evidence.

Hence the importance of inquiring what cause of action is set forth in the complaint. It is contended by the appellant that there is but one cause of action therein set forth, and that cause of action is made up of the combined effects or results of the two defects in the car set forth in the complaint, and that it takes them both to make the one cause of action. If this position can be maintained the instruction is clearly erroneous, because it would amount to telling the jury that they were authorized to find for the plaintiff though an indispensable element of his cause of action was not established by the evidence.

There can be no doubt that the theory upon which both paragraphs of the complaint proceed is that it takes both defects in the car, as alleged in the complaint, to constitute the one single cause of action sued on. Had the learned counsel for appellee supposed that one of those defects, with the other accompanying facts, constituted a cause of action independent of the other, he would have set them up in different paragraphs as the code requires. While there are two paragraphs of the complaint, it is the same two defects in the car combined that forms the principal ground or cause of action, with slightly varied circumstances in the second paragraph with those in the first. So that it is abundantly clear that the pleader

proceeded in each paragraph on the distinct and definite theory that it took both defects alleged in the car combined to make the cause of action relied on in either paragraph. The defendant hâd a right to insist that the plaintiff proceed upon that theory throughout the entire proceeding.

In *Bremmerman* v. *Jennings*, 101 Ind. 253 (257), it was said: "It is well settled that a complaint is to be judged from its general scope and tenor, and that it must proceed on a definite theory, and be sufficient on that theory, or it will not be good at all. *Western Union Tel. Co.* v. *Reed*, 96 Ind. 195; *Cottrell* v. *Ætna Life Ins. Co.*, 97 Ind. 311; *City of Logansport* v. *Uhl*, 99 Ind. 531.

"A plaintiff can succeed upon the case made ·by his complaint, and not upon a different one; his evidence must prove the substance of the issue tendered by his pleading, or he will fail, no matter what else he may prove."

To the same effect are *Holderman* v. *Miller*, 102 Ind. 356; *Leeds* v. *City of Richmond*, 102 Ind. 372.

In *Feder* v. *Field*, 117 Ind. 386 (391), it was said again that "the law is well settled that a complaint must proceed upon a definite theory, that the cause must be tried on the theory constructed by the pleadings, and such a judgment as the theory selected warrants must be rendered and no other or different one. * * * The theory now put forth by the appellees is radically different from that chosen for the trial, but their change of theory is made too late to be of service. It may be that a case could have been made entitling the appellees to a judgment for damages against each of the appellants, but no such case was made, for the complaint seeks a recovery against some of the defendants upon a money demand for goods sold and delivered, and auxiliary equitable relief against others."

The Terre Haute and Indianapolis Railroad Company *v.* McCorkle.

In *Chicago, etc., R. R. Co.* v. *Bills*, 104 Ind. 13 (16), it was said: "It would violate all rules of pleading to permit a complaint to be construed as best suited the exigencies of the case; to allow such a course of procedure would produce uncertainty and confusion, and materially trench upon the right of the defendant to be informed of the issue he is required to meet. The rule is, that the complaint must proceed on a distinct and definite theory, and upon that theory the case must stand or fall." To the same effect is *Louisville, etc., R. W. Co.* v. *Godman*, 104 Ind. 490.

But the appellee's learned counsel insist that there is another rule equally well established that is applicable to the question that must not be lost sight of, and that is that it is only the substance of the issue that need be proven to entitle the plaintiff to recover; that is, that the plaintiff is not bound to prove the facts precisely as alleged, but it is sufficient if he prove the substance of the allegation. This rule, though well recognized and established, is not exactly applicable to the question in hand. The question here is not whether the facts alleged shall be proven exactly as alleged, but rather, whether all the facts alleged essential to the support of the verdict and judgment, that is, all the facts essential to constitute the cause of action relied on in the complaint must be proved in substance in order to entitle the plaintiff to recover. It is true a plaintiff may allege more facts than are essential to constitute a cause of action, and in such case it is ordinarily held that he need only prove the substance of so many of them as constitute a cause of action to entitle him to recover and the balance of them may be regarded as immaterial, and surplusage. Such was the case cited by appellee. *Long* v. *Doxey*, 50 Ind. 385.

But when a cause of action depends on two or more

facts, no proof short of proving the substance, of each and every one of them will warrant a recovery. That is, if the cause of action consists of and depends on the establishment of three facts and the proof only establishes two of them the evidence is not sufficient to support the verdict. *Cleveland, etc., R. W. Co.* v. *Wynant*, 134 Ind. 681; 2 Rice Ev., Chap. 16, pp. 660-663.

It remains to be determined whether the appellee's cause of action by the complaint is made to depend on both defects in the car combined. In the oral argument, the counsel for the appellee, in answer to a question by the court, admitted that if all averments as to one of the defects alleged in the car were stricken out of the complaint, the remaining facts in the complaint would not be sufficient to constitute a cause of action. This concession would be decisive of the case against the appellee. But at the close of the argument the learned counsel withdrew his answer and contended that all averments concerning one of the defects might be stricken out of the complaint and yet there would remain facts enough therein to constitute a cause of action.

In the points and authorities filed by appellees, counsel, on the oral argument on the point now under consideration, say: "It is true when we come to describe how the accident occurred we say (here read from the complaint). But it is very evident that these allegations are inserted to show that McCorkle was not guilty of negligence." The complaint states that appellee "observed that the head of the drawbar was close up against the frame or body of the car, and that it would require great care on his part to make such coupling, and his whole attention was fixed, and of necessity fixed, upon the matter of raising the coupling link so as to have it enter the head of the drawbar. That when the drawbar is in this

The Terre Haute and Indianapolis Railroad Company v. McCorkle.

condition, the danger to the person attempting to couple said car to another car is increased in a very high degree. That as the cars came close together he raised the link   *   *   *   and as it entered the head of the drawbar, he stepped quickly back so as to be out of danger as the cars came in contact, and as he stepped backward the step or stirrup, so bent and projecting outward from under the end of the car, caught his leg and caused him to lose his balance, and   *   *   *   the train, which was backing down, struck him, and threw him backward against the car to which he was attempting to couple, and, in his endeavor to save himself from falling on the track beneath the cars, his right arm came between the dead woods, etc   *   *   *   That by reason of the darkness, and his attention having been fixed upon the coupling of the car, he did not observe, before he was caught by the step, that the same was bent so as to project beyond the end of the car.''

As an excuse and justification for his failure to observe and avoid being caught with the projecting step, he states that he observed the defective condition of the drawbar; that such defect increased the danger in a high degree, so that his whole attention was of necessity fixed upon it.   Now there are three reasons why there could be no recovery if the evidence failed to establish the alleged defect as to the stirrup:   One is that that was the sole cause of his failure to get out from between the cars in time to escape injury, according to the averments in the complaint; and another reason is, that he walked into the danger arising from the defective drawbar knowingly; that is considering that defect as the sole cause of action. The complaint shows that he knew of the defective drawbar and of the increased danger occasioned thereby, and yet he voluntarily undertook to perform the service.

There being no other defect than the drawbar, the case would be brought within the rule laid down in *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20 (27), where it is said "the employe who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect." To the same effect are *Jenney Electric, etc., Co.* v. *Murphy,* 115 Ind. 566; *Rietman* v. *Stolte,* 120 Ind. 314; *Indiana, etc., R. W. Co.* v. *Dailey,* 110 Ind. 75; *Sheets, Admr.,* v. *Chicago, etc., R. W. Co.,* 139 Ind. 682, and authorities there cited.

And the third reason is, that the averments as to the defective drawbar do not show that it caused the injury, and the other averments show that if no other defect had existed but that of the drawbar, no injury would have occurred.

The averments show that the alleged dangerous operation of coupling had been performed by raising the coupling link so that it entered the head of the defective drawbar, after which appellee stepped quickly back until his leg was caught by the defective stirrup. That stirrup was on the outside of the end of the car, wherein the defective drawbar was. This placed him even with the outside line of the cars, some distance outside of the track and out of danger of the wheels of the car, and out of danger of being caught between the deadwoods or bumpers, as they are sometimes called. If there had been no defective stirrup he must have escaped being caught thereby and thrown back against the car, and hence must have escaped injury entirely.

Now if there is no proof about his being caught by the bent stirrup and thrown against the end of the car, and about his efforts to save himself from falling under the wheels, and thereby his arm is thrown between the

bumpers, then how did he get it there? how did it come there? There being no proof about the bent stirrup, there could be no proof how his arm got between the bumpers. There could be no proof that the defective drawbar alone caused it to get there, because there is no such allegation in the complaint, but its averments show affirmatively that the defective drawbar furnished only a very small part of the cause of his arm getting between the bumpers. Though it was comparatively a small part of the cause of his injury, it was yet nevertheless vital and important and indispensably necessary to make out the cause of action. The defect in the drawbar caused the space between the cars to be less when they came together, and the defect required his undivided attention to the coupling, so that his attention and observation were taken away from the defective stirrup, and thus he was furnished with a good excuse for not seeing and avoiding the danger of his leg being caught by the bent stirrup, and thus he was absolved from the charge of contributory negligence. And thus his counsel are justified in saying, as we have seen, that these allegations were put in to show that McCorkle was not guilty of negligence.

But the absence of contributory negligence on the part of the plaintiff in this class of cases is as much a part of the plaintiff's cause of action as the negligence of the defendant. *Pennsylvania Co.* v. *Meyers, Admx.*, 136 Ind. 242.

So that not only the theory upon which the complaint proceeds, but, in fact, it shows that the actionable character of the negligence complained of as to each one of the defects in the car is made, by the complaint, to depend to some extent on the existence of the other defect.

The fourth instruction was therefore erroneous.

The other errors complained of may not occur on another trial, and for that reason we do not extend this opinion to a needless length to consider them.

The judgment is reversed and the cause remanded, with instructions to sustain the motion for a new trial.

